**James Martin SMITH,
Plaintiff-Appellant,**

v.

**Douglas M. GONZALES, et
al., Defendant,**

**Thomas P. Lane, Defendant-Appellee.**

No. 80–3968.

United States Court of Appeals,
Fifth Circuit.

March 15, 1982.

Andrew J. Ruzicho, Columbus, Ohio, Jeff C. Calmes, Baton Rouge, La., for plaintiff-appellant.

William H. Cooper, Baton Rouge, La., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

CLARK, Chief Judge:

Plaintiff, James Martin Smith, appeals from a jury verdict in favor of the defendant, Baton Rouge Parish police officer Thomas P. Lane. In this section 1983 action, 42 U.S.C. § 1983, Smith alleged that his arrest and commitment to a psychiatric ward violated his constitutional rights, as did his arrest on separate charges of incest and carnal knowledge with a minor. He also alleged that Lane's role in the raising of his bail requirement violated his right to due process. Based on *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), we hold that the district court should have dismissed the claims relating to the commitment, incest and bail. We affirm the jury's verdict that Smith's constitutional rights were not violated by the arrest for carnal knowledge.

The following facts are stated most favorably to plaintiff's position. Smith is the father of four children, including a daughter, Shirley. Shirley, age seventeen at the time of these events, was dating a young man named Steve McDowell. In March, 1977 she informed her father that she wanted to marry Steve. Smith apparently gave his consent, and thereafter hired Steve to work for his company.

On Thursday, May 26, 1977, Smith received a telephone call from the manager of an apartment building where Steve was working informing him that Steve and a co-worker were smoking marijuana on the job. Smith informed Shirley of this incident and told her that Steve was fired. Shirley left home that evening without returning.

The following day Smith learned that Shirley was at the home of Steve's parents, and so he proceeded to the McDowell residence. He encountered Steve when he arrived there, and the two exchanged angry words. Smith demanded to see Shirley, but was denied permission by Mr. McDowell. The heated exchange continued between Steve and Smith. Smith threatened to kill Steve, and subsequently as Smith returned to his car, Steve got a rifle from his house and threatened to kill Smith.

Smith drove away from the McDowell residence and was stopped one block away by police officers responding to a call made from the McDowell house while Smith was there. During the ensuing discussion with the police officers, Sergeant Thomas P. Lane of the Baton Rouge Parish Police appeared at the scene. After becoming aware of the particulars of the matter, Lane proceeded to the McDowell residence. While at the McDowell residence, Lane was informed by Mrs. McDowell of her suspicions that something was awry in the relationship between Smith and his daughter Shirley.

Lane returned to where Smith was being detained, and the other officers turned the matter over to him. Smith was then released. However, he proceeded to a precinct station of the East Baton Rouge Sheriff's department and by radio informed Lane that he wished to file a complaint against Steve McDowell for aggravated assault. Lane told Smith he could not handle the matter until the following Tuesday, and so Smith proceeded to the district attorney's office where he discussed the matter with assistant district attorney Michael Ponder, who in turn sent him to Chief Reeves of the Sheriff's Department.

Soon thereafter Shirley went to the precinct station to retrieve some of her personal items which were taken from Smith by the police officers. Acting solely on a hunch, Lane inquired of Shirley whether she had had sexual relations with her father. Shirley initially denied any such thing, but after repeated questioning, and an untrue admonition from Lane that she could be prosecuted for incest, Shirley stated she had an incestuous relationship with her father during the past two years.

During this meeting, Shirley's mother arrived. She was told by Shirley for the first time of the incestuous relationship. Mrs. Smith and Shirley then informed Lane of their fear for their own safety, particularly in light of Smith's behavior the day before. In answer to their question concerning protection, Lane informed them that they could try to get a coroner's warrant committing Smith to a secured psychiatric facility.

Mrs. Smith proceeded to see the coroner, Dr. Hypolite Landry, who issued a warrant after hearing her version of the events related above. Lane executed the warrant which resulted in Smith's commitment to an institution.

On Tuesday May 31, 1977, Lane and Shirley met with Ponder, the assistant district attorney, at which time Shirley informed Ponder of her incestuous relationship with her father. Ponder prepared an affidavit and arrest warrant for Smith. The affidavit was then presented to and the warrant was issued by state Judge Parker. Immediately upon Smith's release from the psychiatric institution he was arrested by Lane on the incest charge pursuant to the warrant. Bond was initially set at $100,000, but was raised to $250,000 by Judge Gonzales when Lane informed the judge that the jailer, Willie Wax, had witnessed Smith making vehement threats to kill Lane and that Smith was a dangerous man. Smith was unable to post this much bond, but ten days later it was reduced to $50,000, which he was able to post.

Shirley and Steve were married on June 10, 1977, the day Smith was released. Sergeant Lane served as best man. Lane's explanation for this is that on learning of Smith's release just prior to the wedding, Mrs. Smith summoned him for protection. He asserts that he was best man by default, since no one else was present to witness the ceremony.

Prior to a second preliminary hearing set for October 21, 1977, Sergeant Lane interviewed a young friend of Shirley's, Debbie Edwards, concerning a report that Smith had asked Edwards to "plant" marijuana in Shirley and Steve's car in order to have them arrested. Lane taped the interview with Edwards, during the course of which Edwards finally admitted to having had sexual relations with Smith on two occasions. On October 9, 1977, Lane arrested Smith on a carnal knowledge charge.

A few months later the district attorney requested a polygraph test on Shirley Smith McDowell concerning the incest charge. In the opinion of the polygraph consultant, Shirley was being truthful in her allegations of incest. The incest charge was then submitted to a grand jury and a true bill was rendered. Smith was tried and acquitted on the incest charge. The district attorney dismissed the carnal knowledge charge.

Smith brought this section 1983 action in United States District Court. After dismissal of defendants District Attorney Ossie Brown and Judge Gonzales, Smith's action continued against Lane for deprivation of his constitutional rights alleging that Lane's involvement in the arrest on the coroner's warrant, the arrest on the incest charge, the setting of the $250,000 bond, and the arrest on the carnal knowledge charge was malicious, harassing and done in bad faith. The jury returned a verdict for Lane. On appeal Smith cites as error two evidentiary rulings by the district court. These relate to the admission of the polygraph results, and the tape recording of the Edwards interview. He also cites two procedural points: the failure of the court to instruct the jury on subjective bad faith, and Lane's failure to plead good faith affirmatively.

Under our en banc decision in *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), the jury should never have considered the alleged violations of constitutional rights arising from the initial arrest on the coroner's warrant, the arrest on the incest charge, and the setting of bond. "The first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d

433 (1979). "If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Id.* As this court has stated, "it is distinctly different to say that the conduct of the defendant did not violate a constitutional right of the plaintiff, than to say that the defendant's conduct violated a constitutional right but the defendant is immunized from liability by virtue of a qualified official immunity." *Barker v. Norman*, 651 F.2d 1107, 1124 (5th Cir. 1981).

■■ The constitution does not guarantee that only the guilty will be arrested, *Baker v. McCollan*, 99 S.Ct. at 2695. If it did, section 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released. *Id.* Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977). Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim. *Id.; Simon v. United States*, 644 F.2d 490 (5th Cir. 1981) (citing *Rodriguez*); *see Walker v. United States*, 471 F.Supp. 38, 40 (M.D.Fla. 1978).

■■ *Rodriguez* controls the claims arising out of Smith's arrests pursuant to the coroner's warrant and the incest charge. These claims should have been dismissed. *See Simon v. United States*, 644 F.2d at 496. Arguably, the allegation that Lane acted in bad faith fits the category of cases which Judge Hill's concurrence urged be excepted from the holding in *Rodriguez: i.e.* where an officer maliciously procures a facially valid warrant. *See* 556 F.2d at 1194–95 (Hill, J., concurring). *See also Farmer v. Lawson*, 510 F.Supp. 91, 95 (N.D.Ga.1981) (discussing cases involving reliance on a

warrant). However, assuming *arguendo* that Lane acted maliciously in procuring these warrants[1] and that such action creates a false arrest, the second principle enunciated in *Rodriguez* would nevertheless control this factual setting. We stated in *Rodriguez* that if the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and insulates the initiating party. 556 F.2d at 1193. Here, Lane arranged to have Shirley Smith tell her story directly to Ponder the assistant district attorney who then filed the affidavit resulting in the issuance of the arrest warrant by Judge Parker. Because Shirley Smith personally appeared before Ponder, Lane's good faith belief in her truthfulness and thus the existence in his own mind of probable cause became irrelevant. Rather, it first became Ponder's duty, having had his own first-hand encounter with the person complaining, and then Judge Parker's when he read Ponder's affidavit, to make their own inquiry and determination as to whether an affidavit should be made or whether there was probable cause to arrest Smith based on Shirley's statements. A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a section 1983 action—is entirely consistent with due process of law. *Baker v. McCollan*, 99 S.Ct. at 2695. The independent decisions of these intermediaries broke the causal chain between Lane and any constitutional violation.

■■ Smith has urged that the district court erred in failing to instruct the jury as to the subjective bad faith prong used to rebut a claim of qualified immunity. *See Procunier v. Navarette*, 434 U.S. 555, 98

[1]. Smith asserted in support of his theory of Lane's bad faith that Lane's threat to prosecute Shirley for incest promoted the accusation against her father, and that Shirley's accusations were leveled against him to "put her father out of commission," thereby allowing her to marry Steve. Smith's theory is that knowing these facts, Lane's belief in Shirley's accusations without further investigation was un-

reasonable and demonstrated Lane's bad faith. Smith alleged also that Lane omitted telling Ponder of his threat of prosecuting Shirley and the other factors which would have led Ponder to question the veracity of her allegations. The allegations of what Lane knew and of what he omitted to tell Ponder are asserted to have created a jury issue of Lane's good faith belief in the lawfulness of his actions.

S.Ct. 855, 55 L.Ed.2d 24 (1978). But even if Lane had a desire to "get" Smith, that desire would be immaterial under these facts. Just as an officer's good intent is irrelevant where he contravenes settled law, *Douthit v. Jones*, 619 F.2d 527, 533 (5th Cir. 1980), so too a bad faith motive to "get" a suspect is irrelevant if the arrest is supported by a properly issued warrant or by the existence of probable cause. *Hunter v. Clardy*, 558 F.2d 290, 292 (5th Cir. 1977). This is so because such an arrest is constitutional in the first instance, *Rodriguez v. Ritchey, supra*, making the officer's state of mind immaterial. *Baker v. McCollan, supra*. Once a warrant is issued, or probable cause comes into existence, it becomes an officer's duty to arrest the suspect regardless of his personal feelings, good or ill, towards the suspect. *Perry v. Jones*, 506 F.2d 778, 780 (5th Cir. 1974). A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause or a warrant and being mulcted in damages if he does. *Turner v. Raynes*, 611 F.2d 92, 93 (5th Cir. 1980), *citing Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

Similarly, no constitutional violation could have stemmed from the facts asserted by Smith concerning the issuance of the coroner's warrant, or the setting of bond. In each of these instances, the exercise of independent responsibility broke the causal chain. Mrs. Smith personally appeared before Dr. Landry. Dr. Landry independently determined the propriety of issuing the warrant, as he testified was always his practice. Because Dr. Landry chose to issue the warrant, the arrest and commitment were valid, and hence constitutional. Lane's actions in carrying out the command of the warrant to deliver Smith for commitment were the only lawful response he could make.

The same principle applies to the setting of bond. The jailer testified below that Smith's threats to kill Lane were of such a nature as to cause him to alert Lane through Chief Reeves. Lane relayed the information concerning these threats, and their source, to Judge Gonzales. Judge Gonzales then exercised his independent judgment in deciding whether Smith's bail should have been raised. Although Smith denies making these threats, the uncontradicted evidence shows that the jailer related that threats were made and that Lane accurately relayed to Judge Gonzales the jailer's version. Judge Gonzales' independent judgment broke the causal chain.

■ The facts adduced as to Lane's arrest of Smith on the charge of carnal knowledge present a different problem. The record does not reflect that this arrest was made pursuant to a warrant. We assume it was warrantless. The testimony indicates that Lane arrested Smith after an interview with Shirley Smith's young friend, Debbie Edwards, during which she admitted that she had had sexual relations with Smith on two occasions. Absent the intervention of an independent magistrate, the trial court followed the prudent course of submitting to the jury the issue of whether this warrantless arrest was made in good faith or with probable cause. *Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir. 1979).[2] The jury decided it was.

■ Smith attacks the jury verdict on this claim by alleging that the court erred in admitting the tape recording of Debbie Edwards' interview with Lane. This argument is without merit. Lane testified that the interview was the sole basis for the arrest and thus the relevance of the content of that interview was established. Also, the tape was authenticated as the entire substance of what transpired in that interview. Smith also raises a hearsay objection to admission of the tapes. The district court adequately instructed the jury to limit their consideration of the tape to whether Lane acted in good faith in seeking an arrest warrant based on Edwards' statements. Moreover, Edwards was on the stand when the tape was played. Plain-

---

**2.** *But see Greer v. Turner*, 639 F.2d 229, 232 (5th Cir. 1981); *Hunter v. Clardy*, 558 F.2d 290, 291–92 (5th Cir. 1973). These cases found probable cause to exist as a matter of law.

tiff's counsel had ample opportunity to and in fact did conduct a searching cross-examination of Edwards as to the circumstances surrounding the interview, and her entire involvement in the case.

Smith urges that admission of the results of the polygraph test given to Shirley Smith was error. This issue pertains to the claim arising out of the arrest for incest. Having found that claim to be without merit in the first instance we need not address the polygraph issue.[3]

Smith's other assertions of error by the district court are without merit. His claim that Lane's affirmative defense of qualified immunity was neither adequately pled nor tried by consent is frivolous, as demonstrated by the colloquy between his counsel and the trial court concerning the inclusion of this issue in the pre-trial order, and his concessions concerning that colloquy at oral argument. His argument that the trial court refused to instruct the jury concerning subjective bad faith is unreviewable because he never actually requested such an instruction. Even if it had been preserved, subjective bad faith is irrelevant if the arrest is constitutional in the first instance.

Had counsel for defendant Lane cited *Rodriguez v. Ritchey,* and the cases in our circuit adhering to its mandate to the trial court, the cause might have ended there. The judgment appealed from is affirmed. Each party shall bear its own costs.

AFFIRMED.

---

3. Our circuit adheres to the rule that polygraph evidence is inadmissible. *United States v. Clark,* 598 F.2d 994 (5th Cir. 1979). *See* 22 C. Wright and K. Graham, *Federal Practice and Procedure,* § 5169, at 106 (1978). *United States v. Clark* was a criminal case where the polygraph was offered on the issue of guilt or innocence. We have made no exception to the rule for civil cases, nor for instances where the polygraph results are purportedly offered for a purpose other than that of asserting the truth of the matter contained therein. *See, e.g., United States v. Kampiles,* 609 F.2d 1233, 1244 (7th Cir. 1979) (to prove statements were voluntary); *People v. Lara,* 12 Cal.3d 903, 117 Cal.Rptr. 549, 528 P.2d 365 (Cal.1974) (to prove informant's credibility on issue of probable cause); *Walther v. O'Connell,* 72 Misc.2d 316, 339 N.Y.S.2d 386 (1972) (civil). We do not reach this issue here.