**B.C.R. TRANSPORT CO., INC., et al.,**
Plaintiffs, Appellees,

v.

**Norman FONTAINE, et al.,**
Defendants, Appellants.

No. 83–1335.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1983.

Decided Feb. 8, 1984.

Mary E. O'Neil, Fall River, Mass., with whom John F. O'Donoghue, and Law Offices of John F. O'Donoghue, Fall River, Mass., were on brief, for Norman Fontaine.

Max Volterra, with whom Volterra, Goldberg & Mangiaratti Law Counsellors, Inc., Attleboro, Mass., was on brief, for plaintiffs, appellees.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

In September, 1980, plaintiffs-appellees B.C.R. Transport Co. (B.C.R.) and Richard Restivo, together with Restivo's wife and daughter, brought a civil rights action under 42 U.S.C. § 1983 (1976) against defendant-appellant Norman Fontaine and three other police officers. The gravamen of their complaint was that the four officers allegedly conducted a wrongful search and seizure of their property in violation of plaintiffs' Fourth Amendment rights. As against defendant Fontaine the jury awarded a total of $150,000 in compensatory damages and $5,000 in punitive damages to Richard Restivo, and $75,000 in compensatory damages and $1,000 in punitive damages to B.C.R. Although the jury returned a verdict against a second officer, he has not appealed. Judgment was entered for the remaining officers. No liability was found against any of the officers insofar as either of the Restivo women were concerned. At the trial defendant Fontaine moved for a directed verdict, judgment notwithstanding the verdict, and a new trial. These motions were all denied, and it is from this that Fontaine appeals.

Defendant Fontaine raises five points on his appeal. The first is that as a matter of law he cannot be found to have acted without probable cause since he obtained search

---

* Of the United States Court of International Trade, sitting by designation.

and arrest warrants on the basis of information furnished by a complainant-victim. A closely related second contention is that even if he acted without probable cause he nevertheless qualifies for immunity from suit under section 1983, having acted upon a victim's complaint. Fontaine next argues that plaintiff Richard Restivo is estopped from bringing a section 1983 action since he failed to challenge the validity of the search warrant in a state criminal prosecution. His fourth contention is that the evidence is insufficient to show either that Fontaine searched B.C.R.'s property or that he did so in an unreasonable manner. His final argument is that the $75,000 damage award to B.C.R. is excessive and unsupported by the evidence.

We find no merit to any of these contentions. Accordingly, for the reasons that follow, we affirm the district court's judgment.

## I.

On the evening of April 9, 1980, the Swansea, Massachusetts police department received a telephone call from a Swansea resident complaining that a stranger with a suitcase was walking along the rural road in front of her home. Defendant Fontaine responded to the call and confronted the stranger who identified himself as John Hubbard of Williamstown, Massachusetts. Hubbard was brought to the Swansea police station and placed in a cell. Under questioning by Fontaine and another police officer, Hubbard told the officers that he had agreed to work for an employee of B.C.R., Jack Riley, whom Hubbard had met in Georgia. Upon their return to Massachusetts Hubbard stated that Riley, and then later Richard Restivo, held Hubbard against his will with force of arms and allegedly made him work without pay.

When Hubbard's wife learned that he had been arrested she telephoned Restivo's wife, Beatrice, who had her daughter, Lori Ann Restivo, go to the police station to see what the problem was. Upon her arrival there, Fontaine asked the younger Restivo if Hubbard took drugs or narcotics since he seemed to be affected by some kind of mind-altering substance. It appears that during the time Hubbard was in police custody he was heard yelling obscenities and repeating incoherent phrases.

The day after Hubbard was arrested his wife and family came to the police station to visit him. Fontaine did not specifically question either Hubbard's wife or Lori Ann Restivo regarding Hubbard's story, although he had abundant opportunity to do so at the police station. Had Fontaine made inquiry he would have discovered that the Restivos not only provided food, shelter and employment for Hubbard, but that he was also free to leave the Restivo home anytime. He was, in fact, treated more as a member of the Restivo family than as a B.C.R. employee.

After confirming that Hubbard had no known criminal record, Fontaine applied for and obtained search and arrest warrants, attaching in support thereof his affidavit which outlined Hubbard's story. He and three other officers executed the warrants on April 10, 1980.

Jack Riley and Richard Restivo were both arrested and then taken to the police station. A B.C.R. tractor-trailer was also seized and taken to the Swansea police station where it was later searched apparently by Fontaine and at least one other officer. In addition a search was conducted of the Restivo home in the course of which an unregistered firearm was discovered and seized. Richard Restivo was eventually indicted on December 5, 1980, for assault, battery, kidnapping and possession of an unregistered firearm. The county district attorney filed a *nolle prosequi* for all but the firearm charge, and on this charge Restivo was convicted.

Against this backdrop we consider Fontaine's first argument—that probable cause for the warrants existed as a matter of law.

## II.

The thrust of Fontaine's first contention is that when an officer obtains a warrant based upon information supplied by an al-

leged victim of a crime, probable cause to search, seize or arrest exists *per se.* While it is undoubtedly true that probable cause determinations predicated on information furnished by a victim are generally considered to be reliable, *see, e.g., United States v. Mahler,* 442 F.2d 1172, 1174–75 (9th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971), no court to our knowledge has ever adopted the *per se* approach which Fontaine advocates here.[1]

The short answer to Fontaine's argument is that whether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case, a question to be resolved by the trier of fact. *See Reeves v. City of Jackson,* 608 F.2d 644, 651 (5th Cir.1979). We believe that there was sufficient evidence from which the jury could have found that Fontaine acted without probable cause. The record shows that Hubbard was a drifter who had behaved incoherently while in police custody. Indeed, Lori Ann Restivo testified that she could hear Hubbard talking in a loud voice at the police station, that he was incoherent and sounded as if he was on drugs. This is a fact which at least on one occasion was brought home to Fontaine who made specific inquiry of Lori Ann Restivo as to whether Hubbard might be on drugs. In addition, although there was evidence showing that Richard Restivo had had an altercation with Swansea police officers some months before, there was no evidence at trial showing that Restivo was well known to Swansea police as a person with violent propensities.

Even though Fontaine may have been acting on information provided by an alleged victim of a crime, this fact did not preclude the jury from finding that probable cause did not exist in this case. *See Scott v. Donovan,* 539 F.Supp. 255, 258 (N.D.Ga.1982) (question of existence of probable cause is issue of fact best determined by jury). To the contrary, we believe there was probative evidence from which the jury could have reasonably concluded that probable cause did not exist for the warrants which Fontaine obtained. We are, in sum, not persuaded that the district court erred in this regard in denying Fontaine's motions for directed verdict, judgment notwithstanding the verdict, and new trial.

### III.

Even if defendant Fontaine lacked probable cause for obtaining and thereafter executing the warrants, he can still avoid section 1983 liability if he can demonstrate his good faith in so doing. *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1322 (5th Cir.1980). On this score, Fontaine's contention mirrors his argument already advanced in connection with probable cause—he is immune from suit, he contends, having acted on a victim's tip. Here again, however, the question of qualified immunity is one of reasonableness—would a reasonable person in the shoes of Fontaine have known he was violating another's constitutional rights? *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). This determination, being one turning on the reasonableness of Fontaine's conduct, was properly left for the jury to resolve. *Reeves v. City of Jackson,* 608 F.2d at 650. We believe that there was sufficient evidence to support the jury's finding that Fontaine acted in bad faith.

First, Fontaine's affidavit baldly stated that he had contacted "gypsy" truck drivers in the area who had heard of Jack Riley, that he was allegedly wanted by the police

---

1. In this connection we find it disingenuous on Fontaine's part to suggest that since the magistrate issued the warrants, this judicial imprimatur is an impregnable shield against any attack on the sufficiency of the underlying affidavit. This is unquestionably bootstrapping. *See Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct.

1509, 1512, 12 L.Ed.2d 723 (1964) ("Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate . . . not serve merely as a rubber stamp for the police.").

in some unknown Massachusetts town, and that he was "a strange character capable of anything." Yet there was no evidence offered at trial corroborating or otherwise substantiating this statement. What is more, it is difficult to discern good faith conduct on Fontaine's part when one considers that Fontaine supposedly went to the trouble of contacting gypsy truck drivers for corroboration, but failed to exhaust first-hand sources of information readily available to him—Lori Ann Restivo and Hubbard's wife. Finally, after confirming that Hubbard had no criminal record Fontaine saw fit to embellish his affidavit with the gratuitous statement that Hubbard "seems to be an upstanding citizen." From all of this an inference of bad faith on the part of Fontaine could have been reasonably drawn by the jury. *See Occidental Life Insurance Co. v. Bob Leroy's Inc.,* 413 F.2d 819, 822 (5th Cir.) (where inferences of good or bad faith must be made, jury has broad power), *cert. denied,* 396 U.S. 939, 90 S.Ct. 373, 24 L.Ed.2d 241 (1969).

■ Fontaine may have been acting on a tip of an alleged crime victim. However, this no more immunized him from liability under section 1983 than it automatically established probable cause for the warrants he sought and obtained. In short, the facts adduced at trial fully support the jury's finding of bad faith. There was, therefore, no error in the district court's denial of Fontaine's three motions on this ground.

### IV.

We turn next to defendant Fontaine's collateral estoppel claim, namely, that Richard Restivo is estopped from bringing a section 1983 action since he failed to challenge the underlying probable cause for the search warrant at a prior suppression hearing.

As already noted, during the execution of the search and arrest warrants an unregistered firearm belonging to Restivo was seized. He was thereafter indicted and convicted for unlawful possession of a firearm. Prior to Restivo's trial on the possession charge he brought a motion to suppress

evidence, alleging that the specific firearm seized was outside the scope of the search warrant, not having been particularized in that warrant. This motion was denied. Although no other Fourth Amendment issues were litigated at the suppression hearing or at Restivo's trial, Fontaine nevertheless argues that this collateral proceeding precludes Restivo from challenging either Fontaine's good faith or probable cause for obtaining the warrants.

■ Under collateral estoppel, "once an issue is *actually* and *necessarily* determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action ...." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (emphasis added). *Accord Nevada v. United States,* —— U.S. ——, 103 S.Ct. 2906, 2918 n. 11, 77 L.Ed.2d 509 (1983) (collateral estoppel can be used only to prevent relitigation of issues actually litigated in a prior lawsuit). Since there is no dispute that Restivo never litigated the issue of probable cause for the warrants at his suppression hearing, we are of the view that collateral estoppel does not bar Restivo's section 1983 action. *See Mastracchio v. Ricci,* 498 F.2d 1257, 1260 (1st Cir.1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975). *See also Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (prior guilty plea in state criminal proceeding did not estop plaintiff from bringing section 1983 action for warrantless search, since legality of search was never actually litigated in this state proceeding).

■ More importantly, even assuming that the probable cause issue was necessarily decided in the state court proceeding, *see Mastracchio,* 498 F.2d at 1261, insofar as Fontaine is concerned that determination would not be given preclusive effect against Restivo under Massachusetts law. *Commonwealth v. Lopez,* 383 Mass. 497, 420 N.E.2d 319, 321 (Mass.1981). And if preclusive effect would not be accorded that state court determination by the courts of Massa-

chusetts, then it cannot be given such effect by a federal court. *Migra v. Warren City School District Board of Education,* —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Haring v. Prosise,* 103 S.Ct. at 2373 n. 6 ("If the state courts would not give preclusive effect to the prior judgment, the courts of the United States can accord it no greater efficacy under [28 U.S.C.] § 1738. *Union & Planters' Bank of Memphis v. Memphis,* 189 U.S. 71, 75 [23 S.Ct. 604, 606, 47 L.Ed. 712], ... "); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); 28 U.S.C. § 1738 (1976).

 In Massachusetts, collateral estoppel requires the concurrence of three circumstances: "(1) a common factual issue; (2) a prior determination of that issue in litigation *between the same parties*; and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar." *Commonwealth v. Lopez,* 420 N.E.2d at 321 (emphasis added). Thus, on the second of these three criteria alone—mutuality of estoppel—Fontaine's claim of collateral estoppel fails.[2]

While we agree with Fontaine that as a general matter collateral estoppel may apply to section 1983 actions against police officers to recover for Fourth Amendment violations, we reject his argument when applied to the specific facts presented here.

### V.

We consider, finally, Fontaine's two points involving plaintiff B.C.R. He contends, first, that there was insufficient evidence to support a judgment in favor of B.C.R. We disagree. There was evidence that the tractor-trailer was sealed at the time it was seized, but had been broken into while in police custody. The contents of the trailer—bags of rice hulls—had been torn open. In addition, the interior of the

tractor was slashed. It is undisputed—indeed, Fontaine admits—that he and one other officer were present when the B.C.R. tractor-trailer was searched. The fact that there may not have been any direct evidence for the plaintiffs that this search was conducted by Fontaine certainly did not prevent the jury from drawing the inference that it was Fontaine who, nevertheless, was responsible for the damage to the B.C.R. property. *See Occidental Life Insurance Co.,* 413 F.2d at 822 ("A jury has broad power to draw inferences from evidence, even when it is undisputed").

As for the damage award to B.C.R. of $75,000, the testimony of Mrs. Restivo, B.C.R.'s president and principal stockholder, showed that B.C.R., which had netted $1,000 per week prior to the search, had been destroyed as a business entity as a result of the search and attendant publicity. This evidence, coupled with the actual damage to B.C.R. property, was sufficiently probative to sustain the jury's award. The award of $75,000 is not so excessive as to necessitate a new trial on this issue. *See Bullard v. Central Vermont Ry.,* 565 F.2d 193, 198 (1st Cir.1977).

### VI.

For all the foregoing, we conclude that there was sufficient evidence to support the jury's verdicts, and that the district court did not err in denying defendant Fontaine's motions for directed verdict, judgment notwithstanding the verdict, and new trial.

*Affirmed.*

---

**2.** We note in passing that the Massachusetts mutuality requirement is not in keeping with the modern trend of cases. *See, e.g., Nevada v. United States,* —— U.S. ——, 103 S.Ct. 2906, 2925, 77 L.Ed.2d 509 (1983) ("mutuality has been for the most part abandoned in cases involving collateral estoppel").