James R. BRIGGS and Louisa Briggs,
Plaintiffs, Appellants,

v.

Edward MALLEY, et al.,
Defendants, Appellees.

No. 84–1449.

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1984.

Decided Nov. 19, 1984.

Aldrich, Senior Circuit Judge, filed a concurring opinion.

John S. Foley, Providence, R.I., with whom Decof & Grimm, Providence, R.I., was on brief for plaintiffs, appellants.

Faith A. LaSalle, Sp. Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R.I., was on brief for defendants, appellees.

Before BOWNES, Circuit Judge, ALDRICH and SKELTON,* Senior Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs James and Louisa Briggs were arrested in March of 1981 under an arrest warrant which was obviously lacking in

* Of the Federal Circuit, sitting by designation.

probable cause. The issue before us is whether the police officer who submitted the inadequate affidavit upon which the arrest warrant was based can be held liable for negligence under 42 U.S.C. § 1983 for damages resulting from the arrest. The district court directed a verdict for the officer, holding that the issuance of the arrest warrant by a judge insulated the officer from liability.

The arrest of Mr. and Mrs. Briggs was triggered by the interception of a telephone call on a court-authorized wiretap in connection with a narcotics investigation of one Paul Driscoll, who was a friend of the Briggs' daughter, Jamie. The police officer on duty noted the substance of this call on a call log. The call log stated that the caller identified himself as "Dr. Shogun" and that there was a general conversation about a party the preceding night. The call log indicated that "caller says I can't believe I was token [*sic*] in front of Jimmy Briggs—caller states he passed it to Louisa—caller and Paul talk about another party going down tonight—Paul says Nancy was sitting in his lap rolling her thing ...." The investigation was being directed by defendant Edward Malley, who at that time held the rank of corporal with the Rhode Island State Police and was assigned to narcotics duty in the detective division. Malley was not present when the call from "Dr. Shogun" was intercepted, but discussed the drug terminology with his partner, Detective Youngsma. They determined that the call was incriminating because "token" is drug parlance for smoking marijuana and "rolling her thing" means rolling a marijuana cigarette. After the wiretap was shut down, Malley prepared affidavits for the issuance of arrest warrants for twenty-two people based upon the information obtained from the tap on Driscoll's phone.

Based solely on the conversation related above, Malley prepared an affidavit and arrest warrant form and a district court felony complaint form for both James and Louisa Briggs. The crime charged in the felony complaint was conspiracy to possess marijuana, a misdemeanor.[1] After preparing the affidavit, arrest warrant and complaint forms, Malley then appeared before a judge of the Rhode Island District Court, who issued arrest warrants for James and Louisa Briggs as well as twenty other individuals. Plaintiffs were arrested about twenty-three days later in the early hours of the morning. They were taken to the state police barracks and later that day to court for arraignment. The fact of their arrest was published in the local and state-wide newspapers. The charges against plaintiffs were subsequently dropped because the grand jury to which the charges were presented returned no true bill.

Plaintiffs commenced an action under 42 U.S.C. § 1983 against both Corporal Malley and the State of Rhode Island alleging fourth and fourteenth amendment violations and additionally filed state law claims of malicious prosecution, defamation and false imprisonment against the same defendants. The case was tried before a jury in February of 1984 and, at the close of plaintiff's evidence, both defendants moved for a directed verdict. The trial judge delivered an opinion from the bench in late February granting the motion as to both defendants. Plaintiffs filed a motion for a new trial, bringing to the trial judge's attention this court's February 6, 1984 decision in *B.C.R. Transport Co., Inc. v. Fontaine,* 727 F.2d 7 (1st Cir.1984). The district court, in a second opinion, denied plaintiff's motion for a new trial. Plaintiffs have appealed from the judgment in favor of Malley, but not the judgment in favor of Rhode Island.

In its initial opinion directing a verdict for Corporal Malley, the district court relied upon two lines of precedent. Under the First Circuit cases of *Madison v. Manter,* 441 F.2d 537 (1st Cir.1971), and *Stadium Films, Inc. v. Baillargeon,* 542 F.2d

---

1. At the trial below, Malley said that this was a mistake and that the charge was actually conspiracy to possess marijuana with intent to deliver, which is a felony, because "[i]n a wiretap all charges are conspiracy."

577 (1st Cir.1976), the district court found police officers to be immune from liability for negligently seeking warrants without probable cause. In both these cases, we had applied the state law of privilege or immunity which required malice before a police officer could be held liable for improper prosecution. *Madison*, 441 F.2d at 538; *Stadium Films*, 542 F.2d at 578. Acknowledging, however, that this approach may have been undercut by recent developments in good faith immunity set out in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the district court turned to Fifth Circuit precedent because it provided a more solid basis for the same result. In *Rodriquez v. Ritchey*, 556 F.2d 1185 (5th Cir.1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), and *Smith v. Gonzales*, 670 F.2d 522 (5th Cir.1982), *cert. denied*, 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982), the Fifth Circuit held that when "the facts supporting an arrest are put before an intermediary, such as a Magistrate or Grand Jury, the intermediary's decision to issue a warrant or return an indictment, breaks the causal chain and insulates the initiating party." *Smith*, 670 F.2d at 526. Thus, regardless of any developments in immunity law allowing negligent conduct to ground § 1983 liability, the district court found that the approval of the arrest warrant by the judge removed any causal connection between the acts of the police officer and the damage suffered by the plaintiffs due to their improper arrest.

In its second opinion, reconsidering its decision in light of *B.R.C. Transport Co., Inc. v. Fontaine*, 727 F.2d 7, the district court indicated that it did not find *B.R.C.* to be a decisive break with past First Circuit precedent. In *B.R.C. Transport Co., Inc. v. Fontaine*, we upheld a jury verdict awarding damages against a police officer for a search and seizure which violated the fourth amendment. We held that where a police officer obtained a search and arrest warrant based upon information furnished by a complainant-victim, the presence of probable cause was still an issue for the trier of fact, as was the issue of the offi-

cer's reasonableness under the *Harlow* immunity standard. In a footnote, we rejected the officer's argument that the magistrate's approval of the warrant prevented a jury from reaching behind this approval and determining probable cause: "[T]his judicial imprimatur is [not] an impregnable shield against any attack on the sufficiency of the underlying affidavit." 727 F.2d at 10 n. 1. We then went on to apply the *Harlow* immunity test to determine whether the officer's conduct in swearing out the affidavit had been objectively reasonable. Implicit in our use of this test was the determination that just as a judicial imprimatur does not serve as an impregnable shield against determining the sufficiency of the underlying affidavit, it would also not serve to shield a police officer from liability due to the improper submission of an insufficient affidavit.

The district court pointed out that *B.R.C.* failed to address the possibility that judicial approval of the warrant immunized the police officer who obtained the warrant without probable cause, neither recognizing the existence of contrary First Circuit precedent or substantially responding to it. In addition, the court found that the new standard of good faith immunity set out in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), did not undercut the holdings of *Madison v. Manter*, 441 F.2d 537 (1st Cir.1971), and *Stadium Films, Inc. v. Baillargeon*, 542 F.2d 577 (1st Cir.1976), because the immunity provided by these cases rested upon public policy considerations not addressed by the *Harlow* decision. The district court also went on to hold that it found the "chain of causation" approach of the Fifth Circuit persuasive even if the immunity approach failed.

Although we agree with the district court that the analysis provided by *B.R.C. Transport* was inadequate to support the break with our prior precedent which it in fact makes, we find that the case nonetheless applied the correct legal principle. We now provide the analysis of our prior precedent necessary to support our holding that

the issuance of a warrant by a judicial officer does not provide "an impregnable shield" against liability under § 1983 for negligent conduct.

We begin by considering our own precedent in light of recent developments in the defense of "good faith" immunity for police officers. In *Madison v. Manter*, 441 F.2d 537 (1st Cir.1971), this court held that negligent procurement of a search warrant would not support liability under § 1983. We relied upon *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the then controlling case on good faith immunity for police officers under § 1983, which held that the common law defenses to false arrest were available to police officers in § 1983 actions. *Madison* involved the procurement of a search warrant by local Massachusetts police officers upon the observation of an ordinary smoker's pipe on the floor of a car. The warrant was later found to be without probable cause. Under Massachusetts law, the officers could not be found liable for improper prosecution without a showing of malice. The court found that this immunity from negligence was supported by important policy considerations:

> A police officer has a much larger public to protect than the individual who, in good faith, he suspects of a crime. He, too, may be discouraged from seeking warrants if the cost is a suit for negligence. The individual who is the object of a warrant has a more singleminded protector—the official whose duty it is to screen the application before issuing the warrant.

*Madison*, 441 F.2d at 539. *Stadium Films, Inc. v. Baillargeon*, 542 F.2d 577 (1st Cir.1976), for the most part relied upon the reasoning of *Madison*. The court found that even if local Rhode Island police officers "should have known" that the warrants they sought were constitutionally infirm, Rhode Island common law immunized

them from liability for such negligence, and under *Pierson* this immunity would extend to § 1983 actions as well.

■ We first note that, since *Pierson*, the Supreme Court has moved away from a reliance upon state law and toward a federal standard of immunity under § 1983. *E.g., Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under the *Harlow* test, the presence of subjective good faith or the absence of malice is irrelevant to the determination of immunity. The conduct of state and government officials is to be measured by an "objective reasonableness" standard; conduct which violates "clearly established statutory or constitutional rights of which a reasonable person would have known" will support § 1983 liability. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. While the Court has not expressly applied this standard to the § 1983 liability of police officers, its adoption of the *Harlow* standard to determine the good faith of police officers for supression purposes in *United States v. Leon*, —— U.S. ——, —— & n. 23, 104 S.Ct. 3405, 3421 & n. 23, 82 L.Ed.2d 677 (1984), suggests that it is also applicable to police officers for § 1983 purposes.[2] This objective reasonableness standard replaces the subjective bad faith/malice standards of immunity previously incorporated into § 1983 from state tort law under *Pierson*.

■ Under the new *Harlow* standard, official conduct which negligently leads to the violation of constitutional rights is sufficient to overcome any qualified immunity that official may have. The objective reasonableness standard should be understood to prohibit conduct which is "constitutionally negligent." This reading of *Harlow* is supported by the Supreme Court's holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that neg-

---

**2.** This reading is supported by Justice Stevens' dissent: "As the majority recognizes, *United States v. Leon, ante,* [104 S.Ct.] at 3421–3422 and n. 23, in all cases in which its "good faith" exception to the exclusionary rule would oper-

ate, there will also be immunity from civil damages." *United States v. Leon,* —— U.S. ——, —— n. 35, 104 S.Ct. 3405, 3456 n. 35, 82 L.Ed.2d 677 (1984) (Stevens, J., dissenting).

ligent deprivations of constitutional rights are actionable under § 1983. *Id.* at 534, 101 S.Ct. at 1912.[3]

As the district court recognized, the negligence standard set forth by *Harlow* precludes the reliance on state tort law defenses found in *Madison* and *Stadium Films.* The district court, however, found that the concept of official immunity rests upon two independent foundations. Immunity serves, in part, to delimit the degree of culpability required before the "shield of immunity" will be lifted from a public official. This the district court described as the "good faith" aspect of immunity. Immunity also rests upon considerations of public policy: in this kind of case, the potential 'chill' upon law enforcement activities which the possibility of personal liability might create. While *Harlow* did address the issue of culpability by eliminating the subjective, "bad faith" prong of the immunity analysis, the district court found that it had not addressed the policy concerns implicated in such immunity. Therefore, since the rejection of negligence as a basis for police officer liability in both *Madison* and *Stadium Films* also rested upon these policy considerations, the district court considered them to still be valid precedent.

While we disagree with the district court's view that the *Harlow* standard fails to address policy considerations, we do recognize that this standard was initially developed for application to high executive officials, not police officers. Clearly, there are different public interests at stake where the arena is crime and public safety and the issue is police officer liability for seeking search or arrest warrants. While we conclude that these interests do not necessitate a higher degree of immunity for police officers, we do find it appropriate to address the district court's reasoning in some detail.

We begin with the contention that subjecting police officers to the possibility of personal liability for seeking search or arrest warrants without probable cause will chill them in the performance of their duties. Certainly if the standard of negligence were such that any time a subsequent determination of no probable cause was made a police officer would be considered "constitutionally negligent," then a valid claim of 'chill' could be made. This, however, is not what we understand the standard to be. It is to be noted first that police officers are routinely called upon to make a judgment of whether there is or is not probable cause. Consequently, it is a standard whose basic contours a police officer can reasonably be expected to know. We recognize, however, that police officers cannot be held to the standards of lawyers or judges. It cannot be considered negligence, therefore, for a police officer to seek an arrest or search warrant in a merely questionable situation. In such a case, the determination by the magistrate that a warrant should issue will insulate the officer from a negligence claim. There is a clear difference, however, between a situation in which there might be probable cause and a situation in which there is *no* probable cause. Under this standard of negligence, we find an emphasis upon the chilling effects of such liability on zealous crime fighting to be inappropriate. This argument overlooks the fact that under our system of government the police have a duty to fight crime without violating constitutional rights. This is difficult at times, but it is what the constitution requires. If we cannot demand of our police officers that they recognize when they do not have the authority to make a search or effect an arrest, then we have given up the very idea of a rule of law. The exercise of police power *within* the law is the very founda-

---

**3.** While the holding in *Parratt* is not stated as a holding on the contours of official immunity under § 1983, it cannot be understood to be anything else. The lack of causality which had proven fatal to other attempts to bring negligence under § 1983, *see Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), was not an issue because the Court simply assumed the requisite causal connection was present. This left only the issue of culpability, which is one facet of the immunity doctrine.

tion of the social contract.[4] We should expect police officers to have a basic understanding of the limits of their power and we must hold them liable when, negligently or intentionally, they overstep these bounds.

A second argument is made in *Madison* that where a warrant is sought, it is not the police officer who has the burden of protecting fourth amendment rights, but rather the independent magistrate since, unlike the police officer, the magistrate has no conflict in interest between a duty to fight crime and a duty to preserve constitutional rights. The danger in making the magistrate the sole protector of the fourth amendment, however, is twofold. It encourages sloppy police work and it enlarges the margin of error leading to unconstitutional invasions of our persons and homes. Unfortunately, not all magistrates subject the affidavit to the scrutiny required by the fourth amendment. The instant case is a perfect example of this. Moreover, the aura of urgency that often surrounds the warrant application process sometimes leads a magistrate to overlook the obvious. At times, the seriousness of the crime being investigated distorts the focus of the magistrate from the facts recited in the warrant application. Under such circumstances, the magistrate is a conduit, not an insulator. The exercise of reasonable judgment by police officers can prevent such errors from occurring without unduly interfering with their crime fighting duties.

We also find that there are significant policy arguments in favor of allowing such liability. The spectre of personal liability may well serve as a deterrent both for individual police officers and their governing units. In addition, we find the remedial purposes of § 1983 well served by the inclusion of negligently caused errors. The fact that such constitutional errors will, for the most part, be rectified somewhere along the line does not in itself provide a remedy for the damage which the error may cause, rather it merely prevents the error from becoming even more serious. The fact that the grand jury failed to return an indictment of the Briggs does not undo the arrest nor repair the damaged psyches and reputations of these plaintiffs. The absolute judicial immunity of the magistrate precludes suit against him or her. Were we to permit the interposition of the magistrate between the police officer and the warrant to immunize the negligence of the police officer, such plaintiffs would be remediless.

We find our reasoning here supported by a parallel fourth amendment analysis of the Supreme Court in *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, in which the Court adopted the *Harlow* reasonableness standard to determine when police conduct required suppression of evidence. The Court indicated that where a warrant is obtained upon the basis of an affidavit which the obtaining officer had no reasonable ground to believe alleged probable cause, the resulting search will not be cured by either the magistrate's approval or the ignorance of the executing officers and the evidence will be suppressed. *Leon*, —— U.S. at —— - —— & n. 23–24, 104 S.Ct. at 3421–23 & n. 23–24. The Court's adoption of the *Harlow* standard for suppression appears to mean that "in all cases in which its 'good faith' exception to the exclusionary rule would operate, there will also be immunity from civil damages." *Id.* 104 S.Ct. at 3456 n. 35 (Stevens, J., dissenting). Thus, since suppression will be appropriate where the obtaining officer should have known there was no probable cause, liability of the obtaining officer will also be appropriate.

We believe the foregoing disposes of the Fifth Circuit's "chain of causation" approach as well. *Rodriquez v. Ritchey*, 556

---

4. [M]ankind will be in a far worse condition than in the state of Nature if they shall have armed one or a few men with the joint power of a multitude, to force them to obey at pleasure the exorbitant and unlimited decrees of their sudden thoughts, or unrestrained, and till that moment, unknown wills, without having any measures set down which may guide and justify their actions.
John Locke, Two Treatises of Government 187 (Dutton, Everyman's Library: New York).

F.2d 1185, 1193 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978); *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.) *cert. denied,* 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982). Despite the fact that this approach is couched in terms of a principle of causality, we find that at bottom it rests upon the same concerns with culpability and immunity already discussed above. The "chain of causation" theory does not withstand scrutiny. If we use the tort concept of "but for" cause to determine when a causal connection is present, it seems clear that "but for" the police officer's submission of the warrant to the magistrate, the warrant would not issue and the search or arrest would not occur. It is the decision of the police officer to bring the matter to the magistrate that is the active cause of the search or arrest. Where that decision is the result of negligence, *i.e.,* failure to exercise a modicum of judgment about the presence of probable cause, that negligence is the cause of the improper search or arrest.

▮▮▮ We conclude, therefore, that our previous cases, *Madison v. Manter,* 441 F.2d 537 (1st Cir.1971), and *Stadium Films, Inc. v. Baillargeon,* 542 F.2d 577 (1st Cir.1976), are no longer controlling. We now rule that judicial approval of a warrant cannot serve as an absolute bar to the § 1983 liability of the officer who obtained the warrant. We emphasize, however, that liability does not attach simply because there is a later determination of no probable cause. Applying the standard of official immunity enunciated in *Harlow,* we hold that *only* where an officer is "constitutionally negligent," that is, where the officer should have known that the facts recited in the affidavit did not constitute probable cause, will liability attach. Where the sufficiency of the facts fall into the grey area appropriate for judicial determination, submission of the affidavit to a magistrate will insulate the officer from

liability. We find, therefore, that the district court improperly directed a verdict for Corporal Malley.

*Reversed and remanded for a new trial.*

ALDRICH, Senior Circuit Judge (concurring).

I do not share the court's view that *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), merely assists us, rather than disposes of the present question out of hand. *Leon,* in effect, based the exclusionary rule upon a principle of penalizing the officer for his "official misconduct" (*cf.* "bad faith," *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). By this is meant an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois,* 422 U.S. 590, at 610–611, 95 S.Ct. 2254, at 2265, 45 L.Ed.2d 416 (1975) (Powell, Jr., concurring in part) quoted in *Leon,* —— U.S. at ——, 104 S.Ct. at 3423. The Court held that such conduct is not cured by the magistrate's acceptance of the affidavit,* even as against a defendant guilty of unlawful possession. I see no room for argument that the magistrate's action should relieve the officer who cannot be said to have acted in objective good faith vis-a-vis an innocent arrestee. Footnote 35 of Justice Stevens' dissent in *Leon* indicating equivalency, quoted in the court's opinion herein, evoked no response from his brethren, and I can read it only as a noting of inevitable consequences, not as a disputation.

So far as "chill" is concerned, it is already clear that an officer's unreasonable conclusion of probable cause can lead to personal liability. *Cf. Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the reasons for, and loss of, qualified privilege with respect to professional conduct by the high executive officials in *Harlow v. Fitzgerald,* ante, and the lowly po-

* "[O]ur good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal *despite the magistrate's authorization." Leon,* n. 23. (Emphasis suppl.)

lice officers in *Leon* are not "perfectly analogous," *Leon*, n. 22, I can have no doubt but that the Court would apply the same general principles of liability and immunity. *Hobson v. Wilson*, 737 F.2d 1, 25 (D.C.Cir.1984). The magistrate's acting upon the affidavit might be admissible as expert evidence of its reasonableness, *cf. Leon*, n. 23 (last sentence), but it cannot remove impropriety.