**Richard A. KALTNER, Plaintiff,**

v.

**Don PEBBLES, et al., Defendants.**

**Civ. No. 82–74061.**

United States District Court,
E.D. Michigan, S.D.

Jan. 29, 1986.

Robert F. Wick, Rochester, Mich., for plaintiff.

Parvin C. Lee, Jr., Booth, Patterson, Lee, Karlstrom & Steckling, Pontiac, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

This is a 42 U.S.C. § 1983 action in which the plaintiff alleges the violation of his due process and fourth amendment rights as guaranteed by the United States Constitution. The defendants' motion for summary judgment is now before the Court.

This action arose out of an arson investigation which resulted in the arrest of the plaintiff. On March 24, 1980, at 12:42 p.m., a serious fire occurred at the plaintiff's residence. The Oakland County Sheriff's Department began an arson investigation at the site of the fire, conducted by the defendant, Pebbles.

The investigation revealed that the plaintiff had returned home for five or ten minutes, approximately one-half hour before the fire started.[1] Earlier that day, plaintiff had used a chemical insecticide to spray the house for fleas. The defendant removed the furnace air filter from the house and took it to a police laboratory for chemical analysis. He was advised by a chemist that the filter contained a residue of fuel oil. On April 29, 1980, the defendant sought and obtained a warrant for plain-

---

**1.** These facts are drawn from the transcript of the preliminary examination that was held in   state court.

tiff's arrest, the charge being arson in violation of M.C.L. § 750.72.

On July 22, 1980, the examining magistrate found that the testimony heard at the preliminary examination was sufficient to show that the plaintiff had a motive and opportunity and that probable cause existed that he did set fire to the house and bound the plaintiff over for trial. On December 15, 1980, the trial court determined that the magistrate had abused his discretion and dismissed the charge against the plaintiff. The Michigan Court of Appeals affirmed the trial court's dismissal. *People v. Kaltner,* Slip Opinion No. 56331 (November 25, 1981). The Court of Appeals said that in order to bind the plaintiff over for trial, the prosecution must produce evidence to establish each element of the offense charged or evidence from which the elements can be inferred. In arson cases, the prosecution must overcome the presumption that a fire is the result of an accident or some other providential cause. *People v. Lee,* 231 Mich. 607, 204 N.W. 742 (1925); *People v. Dorrikas,* 354 Mich. 303, 92 N.W.2d 305 (1958). The prosecution must make out a prima facie case that the fire was willfully or intentionally set. *Lee,* 231 Mich. at 612, 204 N.W. 742.

During the preliminary examination, the defendant testified that the fire appeared to have been caused by flammable liquids or chemicals, based primarily on the chemist's finding of fuel oil traces in the furnace oil filter, as he believed the presence of such substances in a natural gas system to be suspicious. Basically, he believed that it was a case of arson because he could not find an explanation for the fire arising out of natural causes. The Court of Appeals, after noting that the prosecution must do more than prove the absence of natural causes, held that the testimony did not establish the elements of arson. The defendant never was able to connect the fire with the furnace area, nor did he conduct tests to see if the chemicals used to spray the house for fleas may have caused the fire. Further, he found no evidence of flammable substances at the point of origin of the fire. The Court of Appeals concluded: "Thus, the prosecution not only failed to negate the presumption that the fire was the result of accident or some other providential means, but the evidence it did present was insufficient to justify a reasonable man in concluding that all of the elements of the crime were established beyond a reasonable doubt." *Kaltner,* slip opinion at page 4 (cites omitted).

Before the court addresses substantive issues of § 1983 law, it must first decide whether the defendant may benefit from the doctrine of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has held that the trial court must make this decision as soon as possible. "Until this threshold immunity question is resolved, discovery should not be allowed." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. This is purely a legal question to be decided by the court. *Harlow; Donta v. Hooper,* 774 F.2d 716, (6th Cir.1985). In deciding the issue of qualified immunity, the Supreme Court has emphasized that the trial court should be alert to the possibility of frivolous lawsuits which should be dismissed without hesitation.

> Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief ..., it should not survive a motion to dismiss. Moreover, the Court recognized in *Scheuer* that damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity.... In responding to such a motion, plaintiffs may not play dog in the manger, and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits. *Butz v. Economou,* 438 U.S. 478, 507–508 [98 S.Ct. 2894, 2911–2912, 57 L.Ed.2d 895] (1978).

*Harlow,* 457 U.S. at 809, 102 S.Ct. at 2733. The court went on to admonish that "insubstantial suits" against public officials

should not be allowed to proceed to trial. *Id.* 457 at 819, n. 35, 102 S.Ct. at 2739, n. 35.

■ The rule of qualified immunity is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. This is an objective standard, eliminating from consideration inquiry about the officer's subjective state of mind, such as bad faith or malice. *Id.* 457 U.S. at 816–818, 102 S.Ct. at 2737–2738; *Floyd v. Farrell,* 765 F.2d 1 (1st Cir.1985). The decisive issue in applying *Harlow* is whether at the time of the arrest it was clearly established as a matter of law that the defendant did not have probable cause to arrest the plaintiff, that is, whether it was objectively reasonable for the defendant to believe probable cause existed.

As the plaintiff was arrested pursuant to an arrest warrant, the issue is the extent to which an officer who makes an arrest pursuant to a warrant is immunized from liability in a subsequent § 1983 action. Several courts have held that the issuance of a warrant does not create an absolute bar to liability in § 1983 actions. *Briggs v. Malley,* 748 F.2d 715 (1st Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2654, 86 L.Ed.2d 271 (1985); *Floyd v. Farrell,* 765 F.2d 1 (1st Cir.1985); *Olson v. Tyler,* 771 F.2d 277 (7th Cir.1984). These courts have relied upon the Supreme Court's reasoning in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), wherein the court announced the "good faith" exception to the exclusionary rule that shields against suppression if the officer's reliance on the magistrate's determination of probable cause was objectively reasonable. The court held that while a warrant would generally not be subjected to close scrutiny,

suppression would be appropriate if the underlying affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 104 S.Ct. at 3423.[2]

In perhaps the leading case on the effect of warrants on § 1983 liability, the First Circuit held:

> We now rule that judicial approval of a warrant cannot serve as an absolute bar to the § 1983 liability of the officer who obtained the warrant. We emphasize that liability does not attach simply because there is a later determination of no probable cause. Applying the standard of official immunity enunciated in *Harlow,* we hold that *only* where an officer is "constitutionally negligent," that is, where the officer should have known that the facts recited in the affidavit did not constitute probable cause, will liability attach. Where the sufficiency of the facts fall into the grey area appropriate for judicial interpretation, submission of the affidavit to a magistrate will insulate the officer from liability.

*Briggs v. Malley,* 748 F.2d 715, 721 (1st Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2654, 86 L.Ed.2d 271 (1985). In a later case applying *Briggs,* the First Circuit held that seeking an arrest warrant is objectively reasonable so long as the presence or probable cause is "at least arguable" and that "[a]n officer will be held liable for seeking an arrest warrant later found to be without probable cause only if there *clearly* was no probable cause at the time the warrant was requested." *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985).

■ The task in the case at bar is to determine whether there was "clearly" no probable cause to arrest the plaintiff, or whether it was at least arguable. Probable cause to arrest exists where the facts warrant a person of reasonable caution and prudence in the belief that the arrestee has

---

**2.** Neither party has been able to produce a transcript of the hearings before the state magistrate who issued the arrest warrant. The parties have informed the court that the testimony of the defendant at the preliminary examination was basically the same as that given when the warrant was issued. Accordingly, the court will rely upon that testimony in its immunity analysis.

committed a crime. While this requires more than a mere suspicion of criminal activity, *United States v. Calandrella,* 605 F.2d 236 (6th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420, it does not require certainty or convincing evidence of guilt. *Easton v. City of Boulder,* 776 F.2d 1441, (10th Cir.1985).[3] It is at least arguable that the defendant in this case had probable cause to seek an arrest warrant for the plaintiff. The plaintiff entered and left the home for a few minutes shortly before the fire, traces of a petroleum product were found in the filter of the natural gas furnace, and he was unable to find evidence of natural causes of the fire. The comments of the Supreme Court in *Leon* are appropriate in this case:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' [Citation omitted.]

*Leon,* 104 S.Ct. at 3420. The plaintiff not having shown that the defendant clearly had no probable cause to seek an arrest warrant against him, this court finds that it was at least arguable that probable cause existed. Thus the defendant's conduct was objectively reasonable, and he is shielded from § 1983 liability by the doctrine of qualified immunity.

Accordingly, this Court GRANTS the defendant's motion for summary judgment.

IT IS SO ORDERED.

---

**3.** This standard is less demanding than that which must be met under Michigan law before a suspect can be bound over for trial, where the prosecution must establish the existence of all elements of the crime beyond a reasonable doubt and that probable cause exists that the defendant committed the crime. *Kaltner, supra.* The dismissal of the criminal action underlying this case by the Michigan Court of Appeals does not establish that the defendant clearly had no probable cause to seek an arrest warrant for the plaintiff.