**Gary S. CAIANI, Plaintiff,**

v.

**TOWN OF WALPOLE, James Donahue, and Scott Bushway, Defendants.**

Civ. A. No. 83–3643–Y.

United States District Court, D. Massachusetts.

Dec. 13, 1985.

Emanuel Howard, Sanford A. Kowal, Kowal, Howard & Snider, Boston, Mass., for plaintiff.

Leonard Kopelman, Kopelman & Paige, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff, Gary Caiani, owns and operates a 12′ × 12′ wood frame booth at the Walpole Mall (the "Mall") known as Gary's T–Shirt Shop. On November 26, 1982, detectives James Donahue and Scott Bushway of the Walpole Police Department conducted a search of Caiani and the premises at Gary's T–Shirt Shop. The search was made pursuant to a warrant which authorized the detectives to search for controlled substances, paraphernalia, and monies derived from the sale of controlled substances. None of these items were found.

Caiani has brought this suit alleging that the fruitless search violated his civil rights under state and federal law. Joined as defendants are Donahue, Bushway, and the Town of Walpole. The case is now before the court on the defendants' motions for summary judgment. For the reasons discussed below the motions will be allowed.

### I. *Factual Background*

Viewing the record in the light most favorable to Caiani, and indulging in all inferences favorable to him, *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985), the following facts emerge without substantial dispute. On November 26, 1982, Detective Donahue had a telephone conversation with a man named Douglas Macaskill. Macaskill had been arrested a week earlier for possession of cocaine with intent to distribute. Macaskill told Donahue that he would

buy an eighth of an ounce of cocaine from someone named Gary who was the owner of Gary's T–Shirt Shop. Macaskill told Donahue that he would need $315 to make the buy. The two agreed to meet that night at the Mall at 7:15 P.M.

Detective Donahue then arranged with his sergeant to receive $315, and to record the serial numbers of the bills. Donahue also called the owners of the Mall and learned that the booth in the center of the Mall was rented by Gary Caiani and did business under the name of Gary's T–Shirt Shop.

Later that afternoon, Donahue executed an affidavit in support of an application for a search warrant. The affidavit set forth the above stated facts with one variation. Instead of saying that Macaskill told him he "would" buy the cocaine, Donahue averred that Macaskill said he "could" buy the cocaine. Subsequently, the assistant clerk of the Massachusetts District Court of Western Norfolk issued a search warrant authorizing the detective to search Caiani and the booth.

At 7:15 P.M. on the night of the 26th, Donahue met Macaskill behind the Mall. Donahue searched Macaskill to assure himself there was nothing on Macaskill's person, and then gave him the marked $315. Donahue then followed Macaskill into the Mall.

At this point the stories of the participants begin to diverge somewhat. Macaskill, in his deposition and in an affidavit, says that he walked up and down the Mall a few times, never coming closer than ten feet to Caiani's booth. Donahue and Detective Bushway, who was inside the Mall and working as Donahue's partner, claim that Macaskill stopped at the T-shirt booth and talked to Caiani, and then began walking towards the end of the Mall. All agree that Macaskill eventually walked into a store called the Newport Creamery. Upon leaving the Newport Creamery Macaskill met detectives Donahue and Bushway and gave them a plastic bag containing a white powdery substance. Macaskill told the detectives he got the bag from under the toilet seat in the men's room in the Newport Creamery. The detectives asked Macaskill "what all the walking around was about." According to Donahue and Bushway, Macaskill responded that Caiani had told him to put the money behind the first canister of Inositol powder in the General Nutrition Store (located opposite the Newport Creamery), that he did so, and that, when he returned to the T-shirt booth, the woman with Caiani told Macaskill where to find the cocaine.[1] After Macaskill left, Detective Bushway went to the General Nutrition Store where the clerk confirmed that Macaskill had been in the store near the Inositol powder. Bushway checked for the money but found none.

After discussing the evening's events, the detectives elected to consult with Assistant District Attorney Ellen Shapiro and called her from the Mall. She advised them to execute the warrant. The detectives served the warrant after two backup officers arrived. The search produced neither drugs nor any of the marked money.

## II. *Municipal Liability*

This Court recently had occasion to discuss at length the proper standards for imposing municipal liability under 42 U.S.C. § 1983. *Bibbo v. Mulhern*, 621 F.Supp. 1018, 1027–1031 (D.Mass.1985). The Court need only briefly add to what it said in *Bibbo* to dispose of the federal claims against the town in the case at bar.

█ The complaint in this case originally alleged only that the town was the employer of detectives Donahue and Bushway. Apparently recognizing the patent insufficiency of this allegation under the rule of

---

**1.** In his affidavit Macaskill does not deny these responses. He says only that he was questioned "extensively outside the mall, asking many questions rapid fire. I responded hurriedly and tried to get away. I told him the buy went down like I said when detective Donahue called me the next day." In his deposition Macaskill invoked the Fifth Amendment and refused to answer questions about what he said to the detectives when he gave them the cocaine. Thus Macaskill has never denied telling the detectives that he bought the cocaine from Caiani.

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), Caiani later moved to amend the complaint.[2] The amended complaint alleges that the Walpole Police Manual does not contain rules and regulations concerning searches, and that as a result constitutionally defective searches are "almost inevitable." Caiani has submitted a copy of the police manual which supports his allegation that it does not make reference to the department's search and seizure policy.

Caiani's independent proof of the town's "policy" of omitting instructions on search and seizure from the department manual certainly satisfies the concerns raised by Mr. Justice Brennan in his *Oklahoma City v. Tuttle*[3] concurrence. In *Tuttle,* Mr. Justice Brennan concurred in reasoning that a jury instruction which permitted municipal liability to flow from a "single incident" was objectionable solely because it permitted the jury to infer the existence of a municipal policy from the isolated act of brutality. The Court's opinion in *Tuttle* went further, however, ruling that such an approach was doubly flawed. Mr. Justice Rehnquist, writing for the plurality, said not only was it wrong to infer the *existence* of a municipal policy from a single incident, but, in addition, more evidence than the single incident is required to establish the causative link between a policy not itself unconstitutional and the alleged injury.[4] Here, Caiani has not satisfied this additional element of liability under *Tuttle.* The "policy" of omitting search and seizure rules from the department's manual is not

itself unconstitutional.[5] Thus, considerably more proof than the single incident is needed to establish causation. That proof is missing. Caiani advances no evidence concerning other allegations or incidents of similar conduct by Walpole police officers. Nor does he suggest that the detectives in fact never received training in proper search and seizure techniques.[6] Accordingly, his efforts to connect this isolated incident with the fact that the town did not print certain things in its police manual are insufficient to impose municipal liability.

### III. *Liability of the Officers*

Caiani's theory of liability seems to be that detectives Donahue and Bushway put pressure on Macaskill to go along with a scheme to "get" Caiani. At oral argument, counsel for Caiani suggested that the detectives knew no probable cause existed at the time of Donahue's affidavit and at the time of the search. However, there is little, if anything, in the record to support this theory. Viewing the competent evidence now before the Court in the light most favorable to Caiani there appear in this case only two disputed issues of fact: (1) Whether Macaskill told Donahue he "could" or "would" buy the cocaine, and (2) Whether Macaskill walked up to Caiani's booth on the night of the 26th. For Caiani to withstand the motions for summary judgment these disputed facts must be "material." Rule 56(c), Fed.R.Civ.P. The Court rules they are not. Accordingly, the detectives are entitled to judgment as matter of law.

▮▮▮ Assuming without deciding that the search of Caiani's booth on November

---

2. That motion is hereby allowed.

3. —— U.S. ——, 105 S.Ct. 2427, 2437, 85 L.Ed.2d 791 (1985). (Justices Blackmun and Marshall joined in the concurrence.)

4. *Id.,* 105 S.Ct. at 2436 ("where the policy relied on is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish *both the requisite fault* on the part of the municipality, *and the causal connection* between the 'policy' and the constitutional deprivation." (emphasis added, footnote omitted) ).

5. The Court rules that the mere failure to put these policies in the manual, absent any allegation of inadequate training on search and seizure techniques, is not so grossly negligent as to manifest deliberate indifference to the rights of the town's citizens. *Cf. Voutour v. Vitale,* 761 F.2d at 820. Likewise it is not alleged that the town's policy was to search individuals without probable cause.

6. To the contrary, the record demonstrates that both these officers have received extensive training, and their personnel records are virtually free of citizen complaints.

26, 1982 violated some constitutionally protected interest, Donahue and Bushway can be held liable for civil damages only so long as they have acted outside the scope of their official good faith immunity. *See generally, Bibbo v. Mulhern*, at 1026–1027. When one claims that his constitutional rights were violated by an illegal search, it is no small task to pierce the good faith immunity of an officer who has sought and obtained a warrant. It is true that the "judicial approval of a warrant cannot serve as an absolute bar to § 1983 liability of the officer who obtained the warrant." *Briggs v. Malley*, 748 F.2d 715, 720 (1st Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 2654, 86 L.Ed.2d 271 (1985). But where an officer seeks a warrant in a "merely questionable" situation he is not constitutionally negligent. *Id.* at 719. Probable cause must "clearly" be lacking at the time the warrant is requested in order to impose liability. *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985) (arrest warrant).

█ In this case, neither the application for the warrant nor the search itself were so clearly lacking in probable cause as to abrogate the detectives' good faith immunity. At the time he applied for the warrant Donahue had been told by Macaskill, a suspected drug dealer, that he could or would buy some drugs that evening. Macaskill was quite specific as to when and where the purchase would take place, and as to what quantity of drugs could be had for what price. Donahue's independent investigation corroborated the name and location of the alleged dealer, Caiani. In the Court's view these facts give rise to probable cause to search the T-shirt booth. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The question then becomes whether by averring in his affidavit that Macaskill told him he "could" buy the cocaine Donahue violated Caiani's constitutional rights. The Court thinks not. Under the totality of the circumstances here the difference between "could" and "would" is not constitutionally significant. As matter of law, it was objectively reasonable for Donahue to infer that Macaskill "could" buy the cocaine considering the specificity of Macaskill's arrangements. Thus, the slip in using the wrong word is not sufficient to permit an inference that Donahue knowingly misled the neutral magistrate.

Similarly, it is not necessary for the detectives to persuade the trier of fact that Macaskill walked closer than ten feet to Caiani's booth in order to establish probable cause for the search. It is undisputed on this record that at the time of the search Macaskill himself had told the detectives that he bought the white powdery substance from Caiani. Although Macaskill now denies going near the booth, he has not denied making these statements. In addition, Detective Bushway independently corroborated part of Macaskill's story with the clerk at the General Nutrition Store. Moreover, the two detectives checked with the Assistant District Attorney to assure themselves of the propriety of a search. The Court thus rules that it was reasonable for the detectives to believe that probable cause continued to exist to search Caiani's booth, and that the detectives were therefore acting within the scope of their good faith immunity.

The defendants' motions for summary judgment on the federal claims are thus ALLOWED, and the state claims are DISMISSED for lack of subject matter jurisdiction.[7]

7. *See Bibbo v. Mulhern*, at 1031–1032 (where federal claims dismissed before trial, pendant state claims must be dismissed for want of jurisdiction).