IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-20309

_____

BRUCE GAYLOR, SR; ET AL,

                                                            Plaintiffs

BRUCE GAYLOR, SR; DAN WISEMAN

                                                            Plaintiffs-Appellants

                        V.

BRAZOS COUNTY; ET AL,

                                                            Defendants

MADISON COUNTY; ROBERT DUNN, Deputy; PAUL SHIPPER; Deputy

                                                            Defendants-Appellees

-------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Texas
H-98-CV-4105
-------------------------------------------------------------
March 26, 2002

Before EMILIO M. GARZA, BENAVIDES and STEWART, Circuit Judges.

Benavides, Circuit Judge:[*]

Appellants Bruce Gaylor, Sr. ("Gaylor") and Dan Wiseman filed this action in the District

Court for the Southern District of Texas, alleging, in part, that appellees Deputy Sheriff Robert

Dunn ("Dunn") and Deputy Sheriff Paul Shipper ("Shipper") arrested and imprisoned them

without probable cause and caused them to be maliciously prosecuted, all in violation of the

_____
[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. Appellants further alleged that these violations of their constitutional rights were caused by appellee Madison County ("Madison")'s failure to institute appropriate hiring or training standards for its deputies. The District Court[1] granted summary judgment on all these claims, concluding as to the false arrest, false imprisonment and malicious prosecution claims that any improper conduct was irrelevant, in part, because Dunn and Shipper arrested Gaylor and Wiseman pursuant to a valid warrant. The District Court further concluded that Wiseman and Gaylor failed to offer evidence establishing a policy or practice of improper hiring or training. Wiseman and Gaylor appeal from this order. Because we substantially agree with the conclusions of the District Court, we affirm.

## BACKGROUND

In the Fall of 1997, the Texas and Southwest Cattle Raiser's Association ("TSCRA") and Burleson County, Texas, initiated an investigation into a theft ring responsible for stealing farm equipment throughout seven Texas counties, including Madison. Hal Dumas ("Dumas"), a Texas Ranger hired by the TSCRA, coordinated the investigation, and in this capacity worked with various county sheriffs' offices, including Madison's.

In November 1997, stolen farm equipment was found by investigators after executing a search warrant at the home of Roger Moore ("Moore"). Moore subsequently cooperated with investigators, informing the investigators that one of the pieces of stolen farm equipment he sold, a Bush Hog 15 ' shredder (the "Shredder"), was sold to Wiseman through an intermediary, Bill Cunningham ("Cunningham"). Moore stated that he never spoke with Wiseman and never told

---

[1]For ease of reference, we refer to the summary judgment order as an order of the "District Court." The parties consented to proceed before Magistrate Judge Frances H. Stacy approximately a year and a half after the action was filed. Judge Stacy decided the appellees' motion for summary judgment.

Cunningham that the Shredder was stolen[2]. It was later learned that Wiseman, a seasonal farm hand for Gaylor, purchased the Shredder for Gaylor and Gaylor reimbursed him the $4500 paid for the Shredder.

On November 21, 1997, Madison County Sheriff Dan Douget ("Douget") spoke with Wiseman and Gaylor and notified them that the Shredder was stolen property. The following day, Dunn and Shipper went first to Wiseman's home, and later to Gaylor's farm, to retrieve the shredder. When he attempted to retrieve the Shredder, Gaylor told Dunn he had a bill of sale for the Shredder and asked to keep it for a few days to finish his farmwork. When Dunn told him that continued use of the Shredder might constitute tampering with evidence, Gaylor, while refusing to allow use of his tractor to retrieve the Shredder, instructed a farmhand, Joe Taylor ("Taylor"), to lead Dunn and Shipper to the Shredder.

Later, Dunn called Dumas and informed him about the events surrounding the retrieval of the Shredder. Five days later Dumas wrote a report based on this conversation. Subsequently, Dunn wrote a written report and submitted it to Dumas. Dunn's report is generally consistent with Gaylor and Wiseman's version of events. For example, it includes Gaylor's statement that he had a bill of sale for the Shredder.[3] Dumas' report did not contain many of the facts contained in

___

[2]Neither Dunn, who was involved in the arrest of Moore, nor Shipper were present when Moore made this statement and there is no evidence that either were aware of it at the time Gaylor and Wiseman were arrested.

[3]There is one minor difference. As noted above, Gaylor testified that he told Taylor, while in Dunn's presence, to direct Dunn to the Shredder. This statement is not in Dunn's report.
    Dunn's report was never forwarded to the Burleson County prosecutors who later sought grand jury indictments of Wiseman and Gaylor. Furthermore, Burleson County prosecutors did not know of Gaylor's claim that he had a valid bill of sale at the time they sought Gaylor and Wiseman's indictments. Joan Scroggins ("Scroggins"), an Assistant District Attorney responsible for coordinating the presentation of evidence to a grand jury, testified that if she had been aware of this evidence, she probably would have recommended that Gaylor and Wiseman be no billed.

3

Dunn's report, to the effect that, Dumas' report was likely to cause a reader to incorrectly conclude that Dunn had to search for the Shredder.

A grand jury was later convened in Burleson County (the "Grand Jury"). Dunn testified briefly before the Grand Jury, answering approximately four questions. He testified that when he retrieved the Shredder, Gaylor was initially uncooperative, but that he later became cooperative.

On December 9, 1997 the Grand Jury indicted Gaylor and Wiseman, along with others, for Engaging in Organized Criminal Activity [Tex. Penal Code § 71.02] in connection with the stolen Shredder. The indictment was inaccurate in that it indicated that "Moore gave a statement to investigators about his involvement in the theft and named co-defendant[]... Gaylor." It was also inaccurate in that it stated that the Shredder was sold to Wiseman for $3,500 in cash.[4] The language of the indictment also indicates that the Grand Jury incorrectly found that the Shredder was hidden, because the indictment provides that the Shredder was "finally recovered from a swampy area of Mr. Gaylor's property in Madison County, Texas [after] an investigator followed tracks to its location."

Dunn did not know that Gaylor and Wiseman had been indicted until news that warrants had been issued for their arrest came across a teletype. Dunn did not see the indictment until after this action was filed. After Dunn verified that arrest warrants had been issued, Gaylor and Wiseman were arrested.[5]

## ANALYSIS

"This Circuit reviews a district court's grant of summary judgment *de novo*, applying the

---

[4]It appears that Cunningham paid Moore $3500 but told Wiseman that the price was $4,500.

[5]Shipper was an arresting officer; Dunn was not.

same standard of review as would the district court." Merritt-Campbell, Inc. v. RxP Products, Inc., 164 F.3d 957, 961 (5th Cir. 1999). "Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Disputes concerning material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." Id. (citation omitted). In determining whether a genuine issue of material fact precluding summary judgment exists, we view the evidence in the light most favorable to the non-movant and make all reasonable inferences in her favor. See Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 293 (5th Cir. 2000).

## A.    Individual liability of Dunn and Shipper

When, as here, officers have asserted qualified immunity, the first question is whether the plaintiffs have offered evidence establishing the violation of their constitutional rights. Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir. 1999).[6] Gaylor and Wiseman contend that their arrests, made without probable cause to believe they had knowledge that the Shredder was stolen[7], violated their constitutional rights.[8] However, it is undisputed that Gaylor and Wiseman were arrested

---

[6]See also Smith v. Gonzales, 670 F.2d 522, 525-26 (5th Cir. 1982) ("The first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws. If there has been no such deprivation, the state of mind of the defendant is wholly immaterial. As this court has stated, it is distinctly different to say that the conduct of the defendant did not violate a constitutional right of the plaintiff, than to say that the defendant's conduct violated a constitutional right but the defendant is immunized from liability by virtue of a qualified official immunity.") (citations omitted).

[7]Knowledge that the Shredder was stolen was an element of the crime charged. See Tex. Penal Code § 71.02 (Vernon 2002); Tex. Penal Code § 31.03 (Vernon 2002).

[8]It is unclear from the briefs and the record whether the appellants' malicious prosecution claims are based solely on their allegations of unlawful arrest or whether they are also premised on their contention that Dunn lied/withheld evidence from the Grand Jury. See Sanders v. English, 950 F.2d 1152, 1163 (5th Cir. 1992) (concluding that an officer can be held liable for malicious prosecution where he maliciously

pursuant to an indictment. <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 313 (5th Cir. 2001) ("The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant *or* probable cause.") (emphasis added). Sensibly, Gaylor and Wiseman do not contend that, despite a facially valid warrant, Dunn and Shipper were required to independently evaluate the existence of probable cause. <u>See</u> <u>Smith</u>, 670 F.2d at 526 ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim.") (citation omitted). Instead, Gaylor and Wiseman contend that Dunn and Shipper cannot rely on the warrant because they withheld information from the Grand Jury and because they were independently aware of facts negating probable cause.[9] We conclude, however, that Gaylor and Wiseman's factual contentions are not supported by the record.

As to the former, there is no evidence that Dunn or Shipper withheld information from the Grand Jury or attempted to mislead the Grand Jury. Gaylor and Wiseman contend that Dunn

---

withholds exculpatory evidence from prosecuting authorities). To the extent the malicious prosecution claims are also premised on Dunn's alleged conduct vis a vis the Grand Jury, we conclude below that Gaylor and Wiseman failed to offer any evidence that Dunn lied or withheld material information form the Grand Jury.

[9]In support of their position that these two circumstances prevent Dunn and Shipper from relying on the indictment, the appellants cite <u>Taylor v. Gregg</u>, 36 F.3d 453, 456-57 (5th Cir. 1994); <u>Sanders</u>, 950 F.2d at 1164; <u>Hand v. Gary</u>, 838 F.2d 1420, 1427-28 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant."); <u>Jones v. City of Grand Prairie</u>, 1999 WL 21047, *5-*6 (N.D. Tex) (denying summary judgment on false arrest claim where there was evidence that officer recklessly withheld evidence negating probable cause from magistrate when seeking arrest warrant). These cases support only the limited proposition that a facially valid warrant does insulate an arresting officer from a false arrest claim where they have maliciously withheld facts from the neutral intermediary. They do not support the proposition that a facially valid warrant does not insulate an arresting officer where that officer has knowledge of facts negating probable cause. We need not reach the correctness of this proposition, because the appellants' factual contentions on this issue are not supported by the record.

6

withheld from the Grand Jury the fact that Gaylor had a cancelled check and bill of sale for the Shredder. However, Dunn included the fact that Gaylor had a bill of sale in his report, which was submitted to Dumas at the beginning of the case. In fact it is undisputed that Dumas knew that Gaylor claimed to have a bill of sale and canceled check but that Dumas decided not to pass the information on to Burleson County prosecutors.[10] It was Dumas who coordinated the multi-counties investigation, not Dunn.

Furthermore, Gaylor and Wiseman contend that Dunn lied to the grand jury when he testified that Gaylor was uncooperative. However, it is undisputed that Dunn actually testified that Gaylor was initially uncooperative but that he later became cooperative. Dunn's highly subjective impression is supported by undisputed facts: Gaylor tried to convince Dunn that he was entitled to keep the Shredder because he was a bona fide purchaser and asked if he could use the Shredder for the rest of the weekend; Gaylor further told Wiseman not to retrieve the Shredder for the officers;[11] and Gaylor refused to allow the officers to use of one of his tractors to retrieve the shredder.[12] Regardless, we fail to see how Gaylor's level of cooperation, in the abstract, was relevant to the issue of probable cause, i.e., as Gaylor acknowledged possessing the Shredder, Gaylor's level of cooperation in its recovery is not probative of any element of the crime charged. In sum, nothing in the record supports Gaylor and Wiseman's position that Dunn either lied

---

[10]The record is unclear as to whether the Burleson County prosecutors had this information. For the purposes of this appeal we assume they did not.

[11]There was testimony that Gaylor did so because Dunn informed him that touching the Shredder could constitute tampering with evidence.

[12]We do not wish to suggest that these acts were indicative of criminal activity, nor do we seek to criticize Gaylor for his behavior, we merely seek to identify facts, from which Dunn could have concluded that Gaylor was being uncooperative.

before the Grand Jury or withheld material evidence from the grand jury, such that Dunn and Shipper knew that the warrant was invalid.

Similarly Gaylor and Wiseman's latter contention, i.e., that Dunn and Shipper were aware of independent facts, which negated probable cause, is not supported by the record. Gaylor and Wiseman argue that Dunn and Shipper knew there was no probable cause because they knew that Gaylor had a cancelled check and a bill of sale for the Shredder. Clearly, possession of bill of sale does not mean that a person did not know that an item was stolen at the time it was purchased. In addition, Gaylor and Wiseman contend that Dunn knew that Moore stated in an interview that Wiseman did not know the Shredder was stolen. First, this contention is not supported by the appellants' record citation. The record indicates that Dunn was at this interview for approximately one minute and therefore would not have heard this statement made late in the interview. But assuming, arguendo, that Dunn was aware of this statement, it does not establish conclusively that Wiseman and Gaylor were unaware that the item was stolen.

Finally, Gaylor and Wiseman contend that Dunn and Shipper could not rely on the warrant because they knew that the indictment contained false information. However, Wiseman and Gaylor have failed to identify evidence in the record indicating that either Dunn or Shipper saw the indictment before they arrested them.

Because we conclude that Gaylor and Wiseman have failed to establish the existence of a constitutional violation committed by Dunn and Shipper, the officers necessarily acted reasonably and entry of summary judgment was appropriate.

**B.    County liability.**

"Under Monell v. Department of Social Services, a county cannot be held liable under

8

section 1983 on a theory of respondeat superior, but it can be held liable when conduct depriving a person of constitutional rights was pursuant to county policy." Brown v. Lyford, 243 F.3d 185, 191 (5th Cir. 2001). To establish an inadequate hiring and training claim, a plaintiff must show that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." Conner v. Travis County, 209 F.3d 794, 796 (5th Cir. 2000). Having reviewed all of the summary judgment evidence we agree with the District Court that Gaylor and Wiseman failed to offer evidence establishing any of the three elements of a Monell claim.

In addition we note that entry of judgment on this claim was also appropriate because Gaylor and Wiseman failed to establish that Dunn or Shipper violated their constitutional rights. Saenz v. Heldenfels Bros. Inc., 183 F.3d 389, 392 (5th Cir. 1999) ("[I]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized his actions is quite beside the point.")(citation omitted); cf. Brown, 243 F.3d at 191 n.18 (noting that a municipality can be held liable despite a conclusion that the officers are entitled to qualified immunity).

## CONCLUSION

In light of the foregoing analysis, we AFFIRM.

9